IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GHOLAMREZA SHARIFI a/k/a GEORGE SHARIFI, Individually and d/b/a AAMCO TRANSMISSION REPAIR CENTERS,<br><br>Plaintiff,<br><br>VS.<br><br>AAMCO TRANSMISSIONS, INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 3:07-CV-0718-D<br>§<br>§<br>§<br>§<br>§ |

MEMORANDUM OPINION
AND ORDER

In this action arising from the aborted sale of an AAMCO Transmissions franchise from a franchisee to a third party, the court must decide whether the franchisee's tort claims against the franchisor for interfering with the sale are subject to mandatory, binding arbitration. Concluding that they are, the court grants defendant's motion to stay proceedings and compel arbitration.

I

This is a removed action in which plaintiff Gholamreza Sharifi, a/k/a George Sharifi, individually and d/b/a AAMCO Transmission Repair Centers ("Sharifi"), sues defendant AAMCO Transmissions, Inc. ("AAMCO") to recover on various tort claims arising from the aborted sale of his AAMCO Transmissions franchise to Steen Automotive, Inc. and its President, John F. Steen, Jr. (collectively, "Steen"). In 1997 Sharifi, as franchisee, and AAMCO, as franchisor, entered into a Franchise Agreement for the

operation of an AAMCO transmission repair center.[1]  In 2005 Steen agreed to purchase Sharifi's franchise by executing an Agreement of Sale ("Agreement") with Sharifi.  The Agreement provided for a closing date no later than March 25, 2005.  Section 15.2 of the Franchise Agreement required that AAMCO approve the sale of the business and provided that Sharifi must meet certain conditions precedent before the sale could take place.  One condition precedent was that "[a]ny and all financial obligations of Franchisee [Sharifi] are fully paid and satisfied."  D. App. 7.[2]  AAMCO approved the purchase on February 23, 2005, subject to

---

[1]The court derives its recitation of the background facts from Sharifi's state-court petition because the factual allegations of the petition form the basis for determining whether the court should compel arbitration under the arbitration clause.  *See A&A Global Indus., Inc. v. Wolfe,* 2001 WL 1343628, at *1 n.1 (N.D. Tex. Oct. 29, 2001) (Fitzwater, J.) (citing *Ford v. NYLCare Health Plans of the Gulf Coast Inc.*, 141 F.3d 243, 250 (5th Cir. 1998)).  In summarizing the relevant allegations, the court suggests no view concerning their truth.  *Id.*

[2]AAMCO did not prepare its appendix in the manner that N.D. Tex. Civ. R. 7.1(i)(4) requires.  Rule 7.1(i)(4) requires that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner.  The first page must be numbered as "1," and succeeding pages must be numbered sequentially through the last page of the entire appendix (*i.e.,* the numbering system must not re-start with each succeeding document in the appendix).  An envelope that contains a non-documentary or oversized exhibit must be numbered as if it were a single page."  AAMCO's appendix contains an "Exhibit 1" that consists of the Franchise Agreement, but the appendix is not numbered as Rule 7.1(i)(4) requires.  Because the appendix contains only one exhibit, and the pages of the Franchise Agreement are numbered, the court in citing the appendix will refer to the specific page of the Franchise Agreement, e.g., "D. App. 7" will mean page 7 of the Franchise Agreement.

completion of the conditions precedent in the Agreement.

In the period leading up to the scheduled March 25, 2005 closing date, Steen communicated extensively with AAMCO's Franchise Administration Director. Sharifi alleges that AAMCO discouraged Steen from consummating the sale and encouraged him to acquire other, less expensive AAMCO franchises in Florida. Sharifi also avers that AAMCO employees and Steen conspired to "kill the deal" by "falsifying the 'financial obligations'" Sharifi owed AAMCO and by waiting until three days before the scheduled closing to notify Sharifi of his outstanding debt in the amount of $85,312.36. Pet. ¶ 4.10. Sharifi contends that as a result of AAMCO's demand for full payment of the "falsified outstanding 'financial obligations,'" the sale did not close. *Id.* at ¶¶ 4.11 and 4.14. He asserts that the failure to close the sale caused him significant monetary losses, for which he seeks actual and punitive damages.

Sharifi sued AAMCO in Texas state court for (1) civil conspiracy, (2) fraud and misrepresentation, (3) intentional infliction of emotional distress, (4) intentional interference with business opportunities, and (5) intentional interference with existing contract. AAMCO removed the case to this court based on diversity of citizenship.

AAMCO moves to stay the proceedings in this court and to compel arbitration. It relies on § 22.1(b) of the Franchise

Agreement, which contains a broad-type arbitration clause that provides, in relevant part:

> All disputes, controversies or claims *arising out of or relating to* this Agreement shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or its successor . . . .

D. App. 11 (emphasis added).  Sharifi opposes the motion, contending that his claims are separate torts that do not arise out of or relate to the Franchise Agreement.

## II

### A

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983).  Section 2 of the FAA provides that a written arbitration provision in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable," except on grounds that would permit the revocation of any contract in law or equity.  9 U.S.C. § 2.  "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 25.

This case clearly falls within the scope of the FAA.  The arbitration clause in the Franchise Agreement unquestionably is a

"written provision" concerning a transaction that "involves interstate commerce."  9 U.S.C. § 2.  Sharifi is a citizen of Texas, and AAMCO is a Pennsylvania corporation with its principal place of business in Pennsylvania.  Under the Franchise Agreement, AAMCO assisted Sharifi as its franchisee in various commercial capacities in the operation of his transmission repair business. The court therefore concludes that the Franchise Agreement was made in interstate commerce and that the provisions of the FAA apply.[3]

B

Courts conduct a two-step inquiry when deciding whether parties must submit to arbitration.  *See OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 445-46 (5th Cir. 2001); *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257-58 (5th Cir. 1996). The court must decide (1) whether the parties agreed to arbitrate their dispute and (2) whether legal constraints external to the parties' agreement foreclosed the arbitration of the claims.[4] *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004).

---

[3]Section 21.1 of the Franchise Agreement, entitled "Jurisdiction," contains a general choice-of-law provision that states, in pertinent part, that "Pennsylvania law shall apply to any claims arising out of, connected to or relating to this Agreement or its performance."  D. App. 10.  Neither party argues, however, that the court should consider Pennsylvania law in deciding this motion.  AAMCO cites Fifth Circuit authorities and Texas law.  The court will therefore determine the scope of the arbitration provision under federal law.

[4]The court need not address the second question because it is not at issue.

The first step "involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258. Neither party contests the validity of the arbitration provision of the Franchise Agreement. The court therefore need only address whether Sharifi's tort claims fall within the scope of the arbitration clause.

III

A

When the scope of an arbitration clause is reasonably in doubt, it should be construed in favor of arbitration. *Third Party Advantage Adm'rs, Inc. v. J.P. Farley Corp.*, 2006 WL 3445216, at *5 (N.D. Tex. 2006) (Fish, C.J.) (citing *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (internal citations omitted). This strong presumption in favor of arbitration "applies with even greater force" when the parties include a broad arbitration clause. *Sharju Ltd. P'ship v. Choice Hotels, Int'l, Inc.*, 2002 WL 107171, at *2 (N.D. Tex. Jan. 22, 2002) (Kendall, J.) (citing *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999)).

In *Prima Paint Corp v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), the Supreme Court labeled as "broad" a clause requiring arbitration of "any controversy or claim *arising out of or relating to* this Agreement." *Id.* at 397-98 (emphasis added); *see also Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (holding that clause requiring arbitration of "any dispute, controversy or claim arising out of or in relation to or in connection with [an agreement]" was undoubtedly "broad" in scope). An arbitration clause that states that it governs all disputes "related to" the agreement is interpreted as a broad provision encompassing almost all disputes arising between the parties to the contract. *Third Party Advantage Adm'rs,* 2006 WL 3445216, at *5 (*citing Pennzoil,* 139 F.3d at 1067).

Considering the framework established by the case law, there is no question that the arbitration clause in the Franchise Agreement is a broad provision. The clause provides, in relevant part, that "[a]ll disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration . . . ." D. App. 11. The Fifth Circuit has held that when parties include a broad arbitration clause in their agreement, they "intend the clause to reach all aspects of the relationship." *Pennzoil* 139 F.3d at 1067. Broad arbitration clauses "are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to

the contract regardless of the label attached to the dispute." *Id.*

B

Sharifi maintains that his claims are separate torts that do not arise out of or relate to the Franchise Agreement. In determining whether a claim falls within the scope of an arbitration clause, the test under the FAA is whether "the dispute touches matters covered by the agreement." *A&A Global Indus., Inc. v. Wolfe,* 2001 WL 1343628, at *3 (N.D. Tex. Oct. 29, 2001) (Fitzwater, J.) (*citing Pennzoil,* 139 F.3d at 1068). A tort claim is arbitrable if it is "so interwoven with the contract that it could not stand alone." *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,* 141 F.3d 243, 250 (5th Cir. 1998).[5] "[A] tort claim is 'related to' the agreement only if reference to the agreement is required to maintain the action." *Id.* at 250 n.7 (internal citations omitted). In determining the arbitrability of a claim, the court must scrutinize the factual allegations of the complaint, "not to identify whether the facts in support of the action will implicate the agreement as an item of evidence, but to uncover whether an action formally labeled a tort is in essence a breach of contract claim . . . ." *A&A Global Indus., Inc.*, 2001 WL 1343628, at *3 (*citing Ford,* 141 F.3d at 250). "The court must therefore

---

[5]In *Ford* the Fifth Circuit applied the test provided under the Texas General Arbitration Act, Tex. Civ. Prac. & Rem. Code Ann. § 171.001 *et seq.* (Vernon 1997 & Supp. 2001), but stated that there is "no perceptible difference between the federal and Texas standards." *Ford*, 141 F.3d at 250.

examine the facts that give rise to each of the claims asserted to determine 'whether the action could be maintained without reference to the contract.'" *Id.*

C

In determining whether Sharifi's tort claims fall within the scope of the arbitration clause, the court will "examine the facts that give rise to each of the claims asserted" to evaluate "whether the action could be maintained without reference to the contract." *Id.* (*citing Ford,* 141 F.3d at 250). It will adhere to a strong national policy favoring arbitration, *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 56 (1995), and will resolve all doubts as to the scope of the arbitration clause in favor of arbitration, *see Moses H. Cone Memorial Hosp.,* 460 U.S. at 24-25.

1

Sharifi's fourth and fifth claims are for tortious interference with business opportunities and with the existing contract. He alleges that AAMCO intentionally interfered with the sale of his business by falsely representing, three days before the closing date, that he owed a financial obligation of $85,312.36. Sharifi maintains that AAMCO's alleged interference with his potential and existing business relationship with Steen caused him injury that resulted in damages.

When "the success or failure of [plaintiff's] tortious interference claim depends, as a legal matter, on whether the

parties complied with the terms of the Franchise Agreement," the claims are within the scope of a broad arbitration agreement. *Sharju Ltd. P'ship,* 2002 WL 107171, at *2. In *Sharju*, for example, the plaintiff-franchisee alleged that the defendant-franchisor had wrongfully interfered with a separate sales agreement by making misrepresentations to the prospective buyer of the franchise. *Id.* at *1. The franchisee alleged that the franchisor had falsely represented to the buyer that the franchisee had failed to comply with certain conditions precedent to the sale of the franchise, as required by their original agreement. *Id.* The court held that the claim was subject to binding arbitration. *Id.* at *2.

In the present case, the Franchise Agreement outlined the conditions that must be met for Sharifi to sell his franchise to a third party, including that "all financial obligations of Franchisee [were] fully paid and satisfied." D. App. 7. Sharifi is ultimately alleging that AAMCO abused this provision of the Franchise Agreement when it falsely represented Sharifi's financial obligations to AAMCO to prevent the sale of the franchise to Steen. Therefore, Sharifi's "allegations of tortious conduct . . . [are] rooted in certain express terms of the Franchise Agreement." *Sharju,* 2002 WL 107171, at *2. To determine the outcome of Sharifi's claims, the court must interpret these contractual provisions and evaluate the parties' rights under the Franchise Agreement. The Franchise Agreement "served as the conduit through

which these alleged acts were made possible; that is, it is the existence of the [Franchise Agreement] that gave rise to the possible assertion of the claims alleged." *Id.* Sharifi's allegations are therefore "so interwoven" with the provisions of the Franchise Agreement that his tort claims cannot "be maintained without reference to the contract." *Ford,* 141 F.3d at 250. Moreover, as a matter of federal law, any doubts concerning the scope of an arbitration clause should be construed in favor of arbitration. *See AT&T Techs., Inc.,* 475 U.S. at 650; *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24-25. Accordingly, the court concludes that Sharifi's tortious interference claims are arbitrable issues.

2

Sharifi's first and second claims are for civil conspiracy and for fraud and misrepresentation. He alleges that AAMCO conspired with Steen to "kill the deal" by contriving "false financial obligations" to prevent the sale of the franchise. Pet. ¶ 5.4. While *Sharju* referred only to a tortious interference claim, the court concludes that both the civil conspiracy and fraud claims require reference to the contract as a legal matter. As with the tortious interference claims, AAMCO could not have committed fraud or conspiracy "but for the contractual relationship" between AAMCO and Sharifi. *See Third Party Advantage Adm'rs,* 2006 WL 3445216, at *6. Sharifi alleges that AAMCO intentionally misused provisions of

the Franchise Agreement to create a false financial obligation, with the intent that he rely on the misrepresentations. Pet. ¶¶ 5.8-13. Construing doubts as to the scope of arbitrable issues in favor of arbitration, *Moses H. Cone Memorial Hospital,* 460 U.S. at 24-25, the court concludes that Sharifi's fraud and misrepresentation claim cannot "be maintained without reference to the contract," *Ford,* 141 F.3d at 250, and it is therefore within the scope of the arbitration clause.

In his civil conspiracy claim, Sharifi asserts that AAMCO conspired with Steen to commit fraud by providing false financial obligations under the Agreement and intentionally interfering with the Agreement. Pet. ¶¶ 5.1-4. Civil conspiracy is not an independent cause of action. Without an underlying tort, there can be no claim for a conspiracy to commit the tort. *Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 491 (5th Cir. 1999) ("Civil conspiracy requires liability for an underlying substantive tort . . . ."). Sharifi's civil conspiracy claim is therefore necessarily a derivative cause of action that arises from the other tortious acts alleged in the petition. Having concluded that the fraud and tortious interference claims are arbitrable issues, the court holds that the claim of conspiracy to commit these illegal acts is also within the scope of the arbitration clause.

3

Last, recognizing the strong national policy in favor of arbitration, *Mastrobuono,* 514 U.S. at 56, the court concludes that Sharifi's claim for intentional infliction of emotional distress is arbitrable. Sharifi's intentional infliction of emotional distress claim is based on the other acts alleged in his petition. *See* Pet. ¶¶ 5.14, 5.34-37. As with his other claims, absent the contractual relationship between Sharifi and AAMCO, AAMCO could not have committed the intentional acts that allegedly inflicted the emotional distress that Sharifi incurred. Adjudicating this claim would require that the court evaluate whether AAMCO acted wrongfully under the provisions of the Franchise Agreement. Because the intentional infliction of emotional distress claim cannot "be maintained without reference to the contract," *Ford,* 141 F.3d at 250, it falls within the arbitration clause.

*   *   *

For the reasons explained, AAMCO's April 25, 2007 motion to stay proceedings and to compel arbitration is granted. The parties are ordered to participate in binding arbitration before the American Arbitration Association, in accordance with its Commercial

Arbitration Rules.  The clerk of court is directed to close this case statistically.  After the arbitration is concluded, either party move may the court to reopen the case statistically for further proceedings provided for under the FAA.

    **SO ORDERED.**

June 28, 2007.

                                              SIDNEY A. FITZWATER
                                              UNITED STATES DISTRICT JUDGE